IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


BENJAMIN B. LITTLES,
      Plaintiff,

vs.                                  Case No. 3:10cv203/MCR/EMT

JOHN LILLY, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Plaintiff's amended complaint filed under 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)[1] (Doc. 13). Leave to proceed in forma pauperis has been granted, and the initial partial filing fee has been paid (Docs. 4, 7).

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," <u>id.</u>, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  <u>Denton v. Hernandez</u>, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1485 (11th Cir. 1997).  The

---

[1] <u>Bivens</u> recognized a private right of action for money damages against federal actors that engaged in alleged violations of the Constitution or laws of the United States.  403 U.S. at 397.

allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[2] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).

Upon review of the Amended Complaint, the undersigned concludes Plaintiff's claims against John Lilly, Mr. Hutchinson, Derrick Yabui, Marcos Ramirez, James Thomas, Dr. Angel Ortiz, Jaime Mejia, the "John Doe" Defendants at FPC-Pensacola, the "Jane Doe" Defendants at the Escambia County Jail, and the "John Doe" Defendants at the Jackson County Jail should be dismissed with prejudice. Additionally, the undersigned recommends that this action be transferred to the United States District Court for the Western District of Texas for disposition of Plaintiff's claims against the remaining Defendants.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

I.     FACTS[3]

        Plaintiff, an inmate of the Federal Correctional Institution-La Tuna, in Anthony, Texas, sues

twenty-five (25) Defendants in this action; twenty (20) of whom appear to be employees of the

federal Bureau of Prisons (BOP) at various BOP institutions in Florida, Oklahoma, and Texas, three

(3) of whom are employees of the sheriff's department in Escambia County, Florida, and two of

whom are employees of the sheriff's department in Jackson County, Florida (Doc. 13 at 1–4).[4]

Plaintiff states he is asserting seven claims in this lawsuit (*id.* at 5).

        Plaintiff first asserts he was subjected to cruel and unusual punishment and denied procedural

due process and equal protection by Defendants Lilly, Hutchinson, and Yabui because they changed

his job assignment from the FAM CAMP job site at Eglin Air Force Base to the SVS Youth Center

at Eglin without following proper BOP procedures or properly training him for the new job (Doc.

13 at 11–12, 18–21).  Plaintiff alleges on March 2, 2009, while he was assigned to his new job, he

slipped and fell (*id.* at 12).  He was transported to a local hospital and diagnosed as suffering a radial

head fracture to his right elbow (*id.*).  Medical providers at the hospital recommended that he wear

a sling and a splint and apply ice to his elbow (*id.* at 12; *see* Doc. 1 at 36–40).  They also prescribed

Mobic (15 mg) once a day for ten (10) days for inflammation, pain, and swelling, and Lortab (7.5

mg) as needed for pain but not more than once every four hours (Plaintiff was provided twenty (20)

tablets) (Doc. 1 at 36–40).

        As Plaintiff's second claim, he asserts that on March 2, 2009, upon his return to the Federal

Prison Camp-Pensacola (FPC-Pensacola), Defendant Ramirez (the Clinical Director) and Defendant

Thomas (a nurse) substituted Motrin (800 mg) and Acetaminophen (500 mg) for the Mobic and

Lortab (Doc. 13 at 13).  He states he was not provided any medication at all from March 9–11, 2009

(*id.*).  Plaintiff states on March 11, 2009, he received a consultation with an orthopedic surgeon, who

recommended an elbow brace and physical therapy three times per week for four weeks (*id.*).  The

surgeon additionally prescribed Mobic and Lortab (*id.*).  Plaintiff asserts the medical staff at FPC-

---

[3] The undersigned conveys as facts those facts alleged by Plaintiff in his Amended Complaint (Doc. 13).

[4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic
docketing system rather than those Plaintiff may have assigned.

Pensacola again provided only Tylenol and Motrin (*id.*). Plaintiff contends Defendants Ramirez and Thomas deprived him of adequate medical care in violation of the Eighth Amendment (*id.* at 22).

As Plaintiff's third claim, he states he was transported from FPC-Pensacola to the Escambia County Jail on March 14, 2009, and the Tylenol and Ibuprofen were sent with him (Doc. 13 at 13). Upon his arrival at the jail, he informed three unidentified nurses (Defendants "Jane Doe, Nurse") that the medications did not subdue his pain, and he was originally prescribed Mobic and Lortab, an elbow brace, and physical therapy (*id.*). Plaintiff states he was not provided physical therapy or Mobic or Lortab throughout his 12-day detention at the jail (March 14–26, 2009) (*id.*). Plaintiff contends the nurses deprived him of adequate medical care in violation of the Eighth Amendment (*id.* at 23).

As Plaintiff's fourth claim, he states he was returned to FPC-Pensacola on March 26, 2009, and then transferred (later that day) to the Jackson County Jail (Doc. 13 at 13). Plaintiff states Defendant Rickard, the Associate Warden at FPC-Pensacola, and three unidentified correctional officers (Defendants "John Doe, Corrections Officer") transported him to the jail (*id.*). Plaintiff states he advised the four Defendants that the Tylenol and Ibuprofen did not subdue his pain, and he had not been provided physical therapy (*id.*). He states he was housed at the jail until May 13, 2009, during which time he was not provided any medication by the unidentified doctor and nurse (Defendants "Dr. John Doe" and "John Doe, Nurse") even though he requested it (*id.* at 14). Plaintiff contends Defendant Rickard, the BOP correctional officers, and the medical staff at the Jackson County Jail deprived him of adequate medical care in violation of the Eighth Amendment (*id.* at 23).

As his fifth claim, Plaintiff states he was transported to FCI-Tallahassee on May 13, 2009 (Doc. 13 at 14). He advised Defendant Dr. Angel Ortiz and Jaime Mejia, MLP, of the prescribed Mobic, Lortab, physical therapy, and elbow brace and requested that they provide them (*id.*). Plaintiff states they provided only Naproxen and Tylenol, even though he subsequently advised them the medications did not subdue his pain (*id.*). Plaintiff contends Defendants Ortiz and Mejia's failure to provide the Mobic and Lortab deprived him of adequate medical care in violation of the Eighth Amendment (*id.* at 23–24).

As his sixth claim, Plaintiff asserts he was transported to the Federal Transfer Center in Oklahoma on June 16, 2009 (Doc. 13 at 14). He states he advised Defendant Dr. Thomas Goforth and "John Doe, PA/Pharmacist" that he had been prescribed Mobic and Lortab, a brace, and physical therapy (*id.*). He also advised them he had been prescribed Tylenol, Ibuproen, and Naproxen, but these medications did not subdue his pain (*id.*). Plaintiff states Defendant Goforth and "John Doe/PA" failed to provide any medical treatment for his condition, in violation of the Eighth Amendment (*id.* at 14, 22).

As his seventh and final claim, Plaintiff asserts he was transported to FCI-LaTuna on July 2, 2009, at which time he advised the medical staff that he had been prescribed Mobic and Lortab, a brace, and physical therapy (Doc. 13 at 14–15). He also advised them he had been prescribed Tylenol, Ibuproen, and Naproxen, but these medications did not subdue his pain (*id.*). Plaintiff states that same day, he was prescribed Acetaminophen (500 mg) and Naproxen (500 mg) (*id.*). Plaintiff states his prescription expired on August 30, 2009 (*id.* at 15). He states that on September 8, 2009, he learned that he had been scheduled to see an orthopedic surgeon six weeks earlier, but he did not receive the consultation until October 21, 2009 (*id.*). On September 22, 2009, he was given a 7-day supply of Acetaminophen (500 mg) (*id.*). He was not provided any pain medication from September 28 to November 8, 2009 (*id.*). On November 9, he was given a 15-day supply of Acetaminophen (500 mg). He was not provided any pain medication from November 25 to December 28, 2009 (*id.*), even though he continually complained to medical staff that he was in pain (*id.*). When he met with the orthopedic surgeon on October 21, 2009, the surgeon recommended an MRI of Plaintiff's elbow and a post-MRI consultation (*id.* at 15; *see* Doc. 1 at 83). Plaintiff states the MRI request was approved on January 20, 2010, by the Utilization Review Committee, but he still has not received it (Doc. 13 at 15; Doc. 1 at 85). Plaintiff states Defendant R. Chavez, the Health Services Administrator at FCI-La Tuna advised him in April of 2010 that he was aware that the MRI was approved, but funds were not available (Doc. 13 at 15). Plaintiff states he has received no pain medication from December 30, 2009, to the present (*id.* at 15–16). He states he requested pain medication from Defendant Leticia Perez, PA, but she responded that the Acetaminophen was causing heartburn, and Plaintiff had to choose between treatment for his elbow and treatment for his heartburn (*id.* at 16). Plaintiff responded that his chest "felt like it was on fire" and the pain in his

elbow was "unbearable," and Perez chose to treat the heartburn instead of the pain in his elbow (*id.*). Plaintiff contends the Defendants at FCI-La Tuna (Leo Altenberg, Clinical Director; Kristina Behrens, Nurse; Leticia Perez, PA; R. Chavez, Health Services Administrator; Carl Berry, PA; and Rogelio Sanchez, PA) failed to provide adequate medical care for his elbow in violation of the Eighth Amendment (*id.* at 24–25).

As relief, Plaintiff seeks an injunction requiring Defendants to provide an MRI (Doc. 13 at 17). He also seeks compensatory and punitive damages in the amount of $12,200,000.00 (*id.*).

II.     ANALYSIS

A.     Claims Against Florida Defendants:  John Lilly, Mr. Hutchinson, Derrick Yabui, Marcos Ramirez, James Thomas, Dr. Angel Ortiz, Jaime Mejia, the "John Doe" Defendants at FPC-Pensacola, the "Jane Doe" Defendants at the Escambia County Jail, and the "John Doe" Defendants at the Jackson County Jail

Initially, Plaintiff has failed to state a constitutional claim against Defendants Lilly, Hutchinson, and Yabui regarding the change in his job assignment. The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. V. As Plaintiff was clearly not deprived of life, he is entitled to due process only if he was deprived of a property interest or liberty interest within the meaning of the Fifth Amendment. In Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the United States Supreme Court identified two situations in which a prisoner, who has already been deprived of his liberty in the ordinary sense of the word, can be further deprived of his liberty such that due process protections are implicated. The first is "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court." Kirby v. Siegelman, 195 F.3d 1285, 1290–91 (11th Cir. 1999) (citing Sandin, 515 U.S. at 484). The second is "when the [government] has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 1291 (quoting Sandin, 515 U.S. at 484).

In the instant case, Plaintiff's due process claim fails because his factual allegations do not suggest that he had a liberty interest in a specific job assignment. Plaintiff's allegations do not suggest that the conditions imposed by the new job assignment exceeded the sentence he is serving;

nor do they suggest that the informal job change created a hardship or caused a deprivation of benefits that was atypical and more significant than experienced by other prisoners similarly situated.  Although Plaintiff alleges the informal job change caused him to be placed in a job for which he was not qualified or properly trained (*see* Doc. 13 at 20), this does not suggest a restriction or hardship of sufficient significance to invoke due process protections under Sandin.  Indeed, courts have held that changes in job assignments are not atypical.  *See* Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995); *see also, e.g.*, Powell v. Ellis, No. 3:07cv160/MCR/EMT, 2007 WL 2669432, at *4 (N.D. Fla. Sept.7, 2007) (holding that prisoner had no liberty interest in particular job assignment).

Additionally, although the Eleventh Circuit Court of Appeals has never addressed whether a federal prisoner has a protected property interest in his job assignment, those circuit courts that have considered the issue have held that there is no property interest in a federal prisoner's job assignment.  *See* Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009); Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 & n.4 (5th Cir. 1995) (federal inmate has no liberty or property interest in job assignment); James v. Quinlan, 866 F.2d 627, 629–30 (3d Cir. 1989); Garza v. Miller, 688 F.2d 480, 485–86 (7th Cir. 1982); *see also, e.g.,* Woodworth v. United States, 44 Fed. Appx. 112 (9th Cir. 2002) (finding that an inmate "has neither a liberty nor a property interest in his prison job") (unpublished).  The undersigned is persuaded by the reasoning provided by those courts and thus concludes that a federal prisoner has no protected property interest in a job assignment.  Because Plaintiff's allegations fail to state a due process claim that is plausible on its face, the undersigned recommends dismissal of Plaintiff's due process claims against Defendants Lilly, Hutchinson and Yabui.

Plaintiff has also failed to state an equal protection claim with respect to the change in his job assignment.  The Equal Protection Clause requires that the government treat similarly situated people in a similar manner.  *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).  In order to establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his less favorable treatment was the result of intentional or purposeful discrimination.  *See* Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation marks

omitted). Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). Plaintiff must also allege Defendants acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E&T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In the instant case, Plaintiff makes only the conclusory allegation that "These defendants conduct [sic] was intentional and purposeful discrimination." (Doc. 13 at 20). Plaintiff's assertion of personal belief of discriminatory intent by Defendants Lilly, Hutchinson and Yabui, devoid of any factual allegations supporting his belief, is insufficient to state an equal protection claim. Therefore, the undersigned recommends dismissal of Plaintiff's Equal Protection claims against Defendants Lilly, Hutchinson, and Yabui.

Moreover, to the extent Plaintiff asserts an Eighth Amendment claim of deliberate indifference to his safety with regard to the change in job assignment, the facts do not rise to the level of a constitutional violation. The Eighth Amendment "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1988)). "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" Chandler v. Crosby, 379 F.3d 1278, 1288–89 (11th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)). Prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain. *Id.*; Hope v. Pelzer, 536 U.S. 730, 737, 122 S. Ct. 2508, 2514, 153 L. Ed. 2d 666 (2002); Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003); Campbell, 169 F.3d at 1362. To establish "unnecessary and wanton infliction of pain," Plaintiff is required to show "that officials

acted with specific intent."  *Id.*  "[T]he exact nature of the specific intent required depends on the type of claim at issue."  *Id.* at 1363.

To state an Eighth Amendment violation, a prisoner must satisfy both an objective and a subjective inquiry.  <u>Chandler</u>, 379 F.3d at 1289–90; <u>Farrow</u>, 320 F.3d at 1243.  Under the objective component, a prisoner must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992).  Specifically, a prisoner must prove the denial of "the minimal civilized measure of life's necessities."  <u>Chandler</u>, 379 F.3d at 1289–90; <u>Farrow</u>, 320 F.3d at 1243; <u>Rhodes</u>, 452 U.S. at 347.  "The challenged prison condition must be 'extreme'" and must pose "an unreasonable risk of serious damage to his future health or safety."  <u>Chandler</u>, 379 F.3d at 1289–90 (quoting <u>Hudson</u>, 503 U.S. at 9) (other citation omitted).  Under the subjective component, the prisoner must prove that the prison official acted with "deliberate indifference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837,114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994) (stating that an individual may be held liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); <u>Hudson</u>, 503 U.S. at 8; <u>Wilson v. Seiter</u>, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991).  To prove deliberate indifference, the prisoner must show that the defendant prison official "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition or serious medical need in issue. <u>Chandler</u>, 379 F.3d at 1289–90 (quoting <u>Hudson</u>, 503 U.S. at 8).  Negligence or even gross negligence does not satisfy this standard. *Id.*; <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir.1996).

In the instant case, Plaintiff's allegations concerning the change in job assignment do not suggest that change from the FAM CAMP job to the SVS Youth Center job constituted the denial of "the minimal civilized measure of life's necessities" or was otherwise sufficiently serious to satisfy the objective component of the Eighth Amendment standard.  Additionally, although Plaintiff alleges Defendants were aware that changing his job assignment without following formal BOP procedures could pose a risk of serious harm because he may not have been qualified to perform the new job, and he had not been properly trained for it, these assertions do not suggest deliberate

indifference as opposed to negligence.  Moreover, the facts do not suggest a plausible causal connection between the job change and Plaintiff's injury.  Plaintiff states his injury was caused by his slipping on spilled oil, but it is implausible to suggest that he would not have slipped if he had been more qualified for the job or received job training (although training may have made him more alert to the presence of spilled oil, it is unreasonable to suggest that Defendants knew that changing his job assignment without provided training created a substantial risk of Plaintiff's slipping).  Therefore, to the extent Plaintiff asserts an Eighth Amendment claim against Defendants Lilly, Hutchinson, and Yabui based upon their changing his work assignment, the undersigned recommends dismissal of the claim.

Additionally, the facts alleged by Plaintiff fail to show an unconstitutional deprivation of medical treatment.  It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners.  Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  Id. (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" Id. (quoting Wilson, 501 U.S. at, 298 (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  Id. (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb

Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer, 511 U.S. at 834, (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995). To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow, 320 F.3d at 1245–46 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009).

In the instant case, with regard to the FPC-Pensacola Defendants, Plaintiff alleges they substituted their own medical judgment for the judgment of the medical staff at the hospital by substituting Motrin and Tylenol for Mobic and Lortab. The medical records submitted by Plaintiff

with his complaint show that Defendants Dr. Ramirez and Nurse Thomas provided the following treatment for Plaintiff.[5] Upon Plaintiff's return from the hospital, Dr. Ramirez ordered a sling and continued the soft splint/cast provided by the hospital (*see* Doc. 1 at 41–44). Additionally, Dr. Ramirez prescribed Motrin (ibuprofen), 800mg, to relieve pain and swelling, and Tylenol (acetaminophen), 500 mg, to relieve pain (*id.*). Dr. Ramirez also requested an orthopedic consultation (*id.* at 45). On March 9, 2009 (one week after the injury), Nurse Thomas examined Plaintiff and advised him that he would be seen by an orthopedist later that week; he additionally advised Plaintiff to continue following the care instructions of the hospital physician (*id.* at 46–47). Nurse Thomas noted that Plaintiff complained of pain, and that his prescriptions expired that day (*id.*). Two days later, on March 11, 2009, Plaintiff received an orthopedic consultation (*id.* at 48–49). The orthopedist recommended physical range-of-motion therapy three times per week for four weeks and an elbow brace (*id.*). The documents submitted by Plaintiff further show that the gentle range-of-motion therapy was to be conducted by Plaintiff himself (*id.* at 26). The same day, Plaintiff had a follow-up appointment with Dr. Ramirez (*id.*). Dr. Ramirez renewed Plaintiff's prescriptions for Tylenol, 500 mg, and Motrin, 800 mg (*id.*). He also requested that Plaintiff be placed on "call-out" for physical therapy and a hinged elbow brace by March 16, 2009 (*id.*). In the meantime (on March 14), Plaintiff was transported to the Escambia County Jail.

Based upon this evidence, Plaintiff cannot show that Dr. Ramirez's or Nurse Thomas' response to his medical need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Therefore, he cannot satisfy the objective component of the Eighth Amendment standard. Furthermore, the facts fail to show that Dr. Ramirez and Nurse Thomas subjectively knew that their substituting Motrin and Tylenol for Mobic and Lortab created an excessive risk to Plaintiff's health, or that they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they drew that inference. Indeed, the evidence submitted by Plaintiff with

---

[5] As previously noted, in conducting the statutorily required screening of Plaintiff's complaint to determine whether it fails to state a claim on which relief may be granted, the court employs the same standard as Rule 12(b)(6), which governs motion to dismiss. In employing this standard , the court may, and does, consider the documents submitted by Plaintiff with his initial complaint (*see* Doc. 1 at 24–86). The court is not required to disregard documents that Plaintiff himself filed with his original complaint. *See* Gross v. White, 340 F. App'x 527, 534 (11th Cir. 2009) (citing Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (stating that court may consider "the pleadings and exhibits attached thereto" when ruling on a motion to dismiss)).

his complaint indicate that Mobic and Lortab were not available to BOP medical staff because neither of those medications is allowed on the BOP formulary (*id.* at 26). Additionally, although Plaintiff states there was a two-day delay in renewing his prescriptions (from March 9–11), he does not allege any facts suggesting that the delay was attributable to more than merely negligent conduct. Therefore, the undersigned recommends that Plaintiff's claims of deliberate indifference against Dr. Ramirez and Nurse Thomas be dismissed for failure to state a claim.

The facts also fail to state a claim of deliberate indifference as to the three Escambia County Jail Defendants, named as "Jane Doe, Nurse." Plaintiff states he advised "medical staff" that the Tylenol and Motrin (that were sent with him from the BOP facility to the jail) were not subduing his pain, and he was prescribed physical therapy. However, the facts do not suggest that the nurses' conduct in maintaining Plaintiff on the pain medications prescribed by Dr. Ramirez and failing to ensure that Plaintiff performed the range-of-motion therapy during his temporary, twelve-day detention at the jail, was so deficient as to constitute an unnecessary infliction of pain. Furthermore, these allegations do not reasonably suggest that the nurses knew that their failure to provide pain medication stronger than the medication prescribed by Dr. Ramirez, and their failure to ensure that Plaintiff performed his physical therapy during his stay, created a substantial risk of serious harm to his health. Moreover, the facts do not suggest that the nurses' conduct rose beyond the level of negligence to deliberate indifference. Therefore, the undersigned recommends that Plaintiff's Eighth Amendment claims against the nurses at the Escambia County Jail be dismissed for failure to state a claim.

With regard to the Associate Warden and correctional officers from FPC-Pensacola who transported Plaintiff from FPC-Pensacola to the Jackson County Jail on March 26, 2009, Plaintiff cannot show that their failure to seek a change in Plaintiff's prescriptions or request physical therapy during the one-day transport to the jail posed a substantial risk of serious harm. Therefore, the undersigned recommends that Plaintiff's Eighth Amendment claims against Associate Warden Rickard and the three "John Doe" correctional officers at the Jackson County Jail be dismissed.

Finally, Plaintiff has failed to state an Eighth Amendment claim with regard to the FCI-Tallahassee Defendants. Plaintiff states that on May 13, 2009, he advised Defendant Dr. Angel Ortiz and Jaime Mejia, MLP, that a doctor had prescribed Mobic, Lortab, physical therapy, and an

elbow brace; and he requested that they provide this treatment, but his request was denied. However, Plaintiff's medical records show that he received the elbow brace as well as prescriptions for Naproxen, 500 mg, and Tylenol, 500 mg, from Defendant Meija (Doc. 1 at 50–54). Furthermore, as previously noted, the documents submitted by Plaintiff further show that the gentle range-of-motion therapy was to be conducted by Plaintiff himself (*id.* at 26). These facts do not suggest that Defendant Meija's response to Plaintiff's medical condition was so deficient as to constitute an unnecessary infliction of pain, or that he knew that his response posed a substantial risk of serious harm to Plaintiff's health. As to Dr. Ortiz, there is no indication in Plaintiff's medical records that he was ever seen by Dr. Ortiz. Therefore, Plaintiff's factual allegations fail to state an Eighth Amendment claim as to these Defendants. Accordingly, the undersigned recommends dismissal of Plaintiff's Eighth Amendment claims against Dr. Ortiz and Jaime Mejia.

  B. <u>Claims Against Remaining Defendants</u>

   In light of the recommendations of the undersigned that Plaintiff's claims against John Lilly, Mr. Hutchinson, Derrick Yabui, Marcos Ramirez, James Thomas, Dr. Angel Ortiz, Jaime Mejia, the "John Doe" Defendants at FPC-Pensacola, the "Jane Doe" Defendants at the Escambia County Jail, and the "John Doe" Defendants at the Jackson County Jail be dismissed, the undersigned additionally recommends that this case be transferred to the Western District of Texas for disposition of his claims against the remaining Defendants, pursuant to 28 U.S.C. § 1404(a).[6] A district court may transfer any case to any other district where the case originally may have been brought. 28 U.S.C. § 1404(a). To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties. *See* <u>Robinson v. Giarmarco & Bill, P.C.</u>, 74 F.3d 253, 260 (11th Cir. 1996). The court's consideration of the § 1404(a) factors may include such criteria as the plaintiff's initial choice of forum, the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the

---

 [6] As explained in <u>Dubin v. United States</u>, 380 F.2d 813, 816 (5th Cir. 1967), "[i]n substance, § 1404 is the statutory enactment of the doctrine of forum non conveniens tempered to allow transfer rather than dismissal. By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there."

location of relevant documents, the availability of compulsory process for witnesses, the financial ability to bear the cost of the change, and trial efficiency. *See* <u>Tampa Bay Storm, Inc. v. Arena Football League, Inc.</u>, 932 F. Supp. 281, 282 (M.D. Fla. 1996). Federal courts ordinarily accord deference to a plaintiff's choice of forum; however, in this case it is evident that the Western District of Texas is more convenient for the parties and witnesses, and continuing this litigation there would be in the interest of justice.

The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court and [is] reviewable only for an abuse of that discretion." <u>Roofing & Sheeting Metal Serv. v. La Quinta Motor Inns</u>, 689 F.2d 982, 985 (11th Cir. 1982); *see also* <u>Brown v. Connecticut Gen. Life Ins. Co.</u>, 934 F.2d 1193, 1197 (11th Cir. 1991). Such transfers may be made sua sponte by the district court. <u>Mills v. Beech Aircraft Corp.</u>, 886 F.2d 758, 761 (5th Cir. 1989); <u>Robinson v. Madison</u>, 752 F. Supp. 842, 846 (N.D. Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation."); <u>Empire Gas Corp. v. True Value Gas of Florida, Inc.</u>, 702 F. Supp. 783, 784 (W.D. Mo. 1989); *accord* <u>Roofing & Sheeting</u>, 689 F.2d at 991 n.14.

In this case, analysis of the relevant factors leads the undersigned to conclude that the convenience of the parties and witnesses and the interest of justice favor transfer. The convenience of the parties weighs in favor of transfer to Texas, since Plaintiff and the majority of the remaining Defendants are located there. As to convenience of witnesses and the availability of compulsory process for witnesses, it appears that most of the witnesses are party witnesses who reside and work in Texas. Additionally, sources of proof, including relevant medical documents, would be more readily accessible in Texas, since Plaintiff is located there and a substantial part of the events underlying the remaining claims occurred there. Finally, transferring venue to Texas would result in no additional financial cost to the parties. Therefore, consideration of the relevant factors leads the undersigned to conclude that this action should be transferred to the United States District Court for the Western District of Texas for disposition of Plaintiff's claims against the remaining Defendants.

III.     CONCLUSION

Based on the foregoing, the court concludes that Plaintiff's allegations against the Florida Defendants (including John Lilly, Mr. Hutchinson, Derrick Yabui, Marcos Ramirez, James Thomas, Dr. Angel Ortiz, Jaime Mejia, the "John Doe" Defendants at FPC-Pensacola, the "Jane Doe" Defendants at the Escambia County Jail, and the "John doe" Defendants at the Jackson County Jail) do not rise to the level of a violation of the Due Process Clause, Equal Protection Clause, or the Eighth Amendment. Therefore, Plaintiff's claims against the Defendants listed *supra* should be dismissed in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), and those persons should be dismissed from this action. Furthermore, dismissal of Plaintiff's claims against the Florida Defendants should be with prejudice, since the court previously advised Plaintiff of the deficiencies in his constitutional claims and provided him an opportunity to amend the complaint (*see* Doc. 9). *See* Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995). In light of this recommendation, the undersigned additionally recommends that this case be transferred to the Western District of Texas, pursuant to 28 U.S.C. § 1404(a), for disposition of Plaintiff's claims against the remaining Defendants.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's claims against John Lilly, Mr. Hutchinson, Derrick Yabui, Marcos Ramirez, James Thomas, Dr. Angel Ortiz, Jaime Mejia, the "John Doe" Defendants at FPC-Pensacola, the "Jane Doe" Defendants at the Escambia County Jail, and the "John Doe" Defendants at the Jackson County Jail be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and these Defendants be **DISMISSED** from this action.

2.      That the clerk **TRANSFER** this case to the United States District Court for the Western District of Texas for disposition of Plaintiff's claims against the remaining Defendants.

3.      That the clerk close this case.

At Pensacola, Florida, this 23rd day of November 2010.

                                        /s/ Elizabeth M. Timothy

**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).